**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-20-02612-001-TUC-JCH (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| La Shawn Rennee Zimmerman, | |
| Defendant. | |

Before the Court is Defendant Zimmerman's "Appeal of Magistrate Court's Order of Detention" ("Appeal") (Doc. 37) under 18 U.S.C. § 3145(b). Zimmerman was previously released from pretrial detention, then violated several release conditions resulting in an arrest warrant and her detention. (Docs. 12, 13, 23.) Zimmerman now appeals Magistrate Judge Jacqueline M. Rateau's decision to deny Zimmerman's second request for release. (Docs. 37, 33.) The Government opposes the Appeal. (Doc. 39.) The Court will deny the Appeal and affirm the detention order.[1]

**I.      Background**

In November, 2020, a grand jury indicted Zimmerman on four counts: (1) conspiracy to possess with intent to distribute Fentanyl; (2) possession with intent to distribute Fentanyl; (3) conspiracy to import Fentanyl; and (4) importation of Fentanyl. (Doc. 6.) After waiving her *Miranda* rights, Zimmerman acknowledged knowingly

---

[1] The Court finds these matters appropriate for resolution without oral argument. *See* L.R. 7.2(f).

carrying 1,000 Fentanyl pills as she crossed the border from Mexico into the United States. (*See* Doc. 39 at 6.)

In early February, 2022, Pretrial Services issued a report recommending Zimmerman's detention pending an assessment for placement at a residential treatment facility. (Doc. 16 at 7.) Later that month, Zimmerman was deemed suitable a residential treatment facility, and Pretrial Services issued an Addendum to its report. (Doc. 17 at 2.) The Addendum recommended release on ten conditions. (*Id.* at 7–8.) These conditions included (1) abstaining from unprescribed drugs and all alcohol; (2) notifying Pretrial Services before changing addresses or phone number; (3) participating in a mental health treatment program; and (4) participating in drug treatment and drug testing. (*Id.* at 7.) Magistrate Judge Lynnette C Kimmins held a hearing and ordered Zimmerman released on the conditions recommended in the Addendum plus another condition to resolve all pending lower court matters and provide proof to Pretrial Services. (Doc. 12; Doc. 13 at 2.)

In mid-March, Pretrial Services filed a Violation Report. (Doc. 23.) The Report detailed Zimmerman's violation of several conditions of her release: (1) Zimmerman tested positive for methamphetamine and alcohol; (2) Zimmerman told Pretrial Services she was living with her cousin at a certain address, but when Pretrial Services attempted to contact her there, Zimmerman's aunt answered and said neither Zimmerman nor her cousin had ever lived there; (3) Zimmerman missed all of her scheduled substance abuse and mental health treatment sessions; and (4) Zimmerman failed to report to Pretrial Services for random urinalysis. (*Id.* at 2–3.) As the result of these violations, Pretrial Services petitioned for a warrant to bring Zimmerman before the Court to show cause why release conditions should not be revoked. (Doc. 18.) Magistrate Judge Rateau issued the warrant, (Doc. 19), and the U.S. Marshals Service arrested Zimmerman on September 4. (Doc. 24.) On September 29, at Zimmerman's Pretrial Release Revocation hearing, Judge Kimmins ordered Zimmerman detained but granted defense counsel's request to have Zimmerman screened for placement at an inpatient treatment program. (*See* Doc. 27; Doc. 32.)

On November 1, Zimmerman moved to re-open her detention hearing. (Doc. 30.)

On November 7, Pretrial Services issued a Supplemental Report. (Doc. 32.) The Supplemental Report recommended detention based on Pretrial Services' original concerns and Zimmerman's failure to comply with her conditions of release. (*Id.* at 2.) The Report noted that Zimmerman was found suitable for intensive-outpatient treatment with transitional housing, but not for inpatient treatment. (*Id.*) On November 16, Judge Rateau denied Zimmerman's request for release, citing unavailable beds at Zimmerman's approved intensive out-patient treatment facility, and Zimmerman's unsuitability for inpatient treatment. (Doc. 33.) This Appeal followed on December 8. (Doc. 37.)

## II.     Legal Standard

A district court reviews a magistrate judge's detention order de novo. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Bail Reform Act mandates pretrial release unless the court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). Probable cause to believe that the defendant violated the Controlled Substances Act punishable by at least 10 years in prison raises the presumption that no conditions could reasonably assure the defendant's appearance. 18 U.S.C. § 3142(e)(3)(A)–(B). This presumption shifts the burden of production to the defendant, but the burden of persuasion remains with the Government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

As many circuits recognize, the "defendant's burden of production is not heavy, [but] he must introduce at least *some* evidence." *U.S. v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (emphasis added; internal quotations omitted); *see also U.S. v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991) (same "some evidence" standard); *U.S. v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) (same); *U.S. v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (same). That is, the defendant must offer at least some evidence "or basis to conclude that the case falls 'outside 'the congressional paradigm' giving rise to the presumption." *U.S. v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018) (quoting *Stone*, 608 F.3d at 945-46). Even when rebutted, the presumption against release remains and is to be considered alongside all

other relevant factors. *Hir*, 517 F.3d at 1086.

If a defendant succeeds in rebutting a presumption of flight risk or dangerousness, the Court then considers four factors in determining whether to detain or a release the defendant:
> (1) the nature and circumstances of the offense charged…;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

*Id.*; 18 U.S.C. § 3142(g)(1)–(4).

The government must show the defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The government must show the defendant poses a danger to the community by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Any doubts about the propriety of release should be resolved in Defendant's favor. *Id.* at 1405.

**III. Analysis**

Zimmerman concedes there is a presumption of detention based on the allegations in this case. (Doc. 37 at 4 (citing 18 U.S.C. § 3142(e)).) Zimmerman attempts to rebut the presumption on several grounds. (Doc. 37 at 5–6.) First, she requests assignment to transitionary housing as a release condition to ensure her location, compliance with drug treatment, and transportation to court appearances. (*Id.* at 5.) Second, Zimmerman emphasizes that she has lived in Tucson for six years and is a member of the Pascua Yaqui Tribe, and she has six U.S. children who live with Zimmerman's mother in Las Vegas. (*Id.* at 5–6.) Third, Zimmerman characterizes her criminal history as minimal, and points out

that the 14 warrants issued for failure to appear over the course of her life were all quashed. (*See id.* at 6; Doc. 16 at 5–6.) Finally, Zimmerman describes the evidence and circumstances of her alleged offenses as revealing that she is not an organizer or leader of a larger drug trafficking organization. (Doc. 37 at 6.)

Zimmerman's arguments fail to distinguish her from the congressional paradigm for presuming no conditions could assure appearance. First, transitionary housing might make Zimmerman's compliance more likely, but speculation is not evidence. Second, Zimmerman lost custody of her six children due to substance abuse, which is why they now live in Las Vegas. (Doc. 16 at 2.) Zimmerman has been unemployed and ostensibly living with relatives for the past three years. (*Id.*) That is not evidence of strong community ties. Third, Zimmerman's criminal history is not minimal, which is why Pretrial Services was "concerned with [Zimmerman's] five pending lower court cases with multiple failures to appear in each case." (Doc. 16 at 7.) Finally, the implication that Zimmerman played a minor role in conspiring to import Fentanyl does not change the fact that she is facing a substantial prison terms. For these reasons, Zimmerman has failed to rebut the presumption of detention. Even if she had successfully rebutted the detention presumption, the Bail Reform Act factors nonetheless cut against her release.

**A. Bail Reform Act Factors**

**1. Nature and Circumstances of the Offense**

The Court may consider the possible punishment and the incentive to flee associated with a defendant's criminal exposure. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (noting that the defendants faced a greater penalty after being charged with multiple counts with possible maximum sentences that could be served consecutively, which provided a greater incentive to consider flight).

Zimmerman concedes that she faces at least ten years in prison. (*See* Doc. 37 at 4; 18 U.S.C. § 3142(e).) The Government adds that she faces a maximum 40-year sentence for each count. (Doc. 39 at 6.) The nature and circumstances of Zimmerman's offenses weigh against release.

**2. Weight of the Evidence Against Defendant**

The weight of the evidence is the least important factor that the Court considers and is not a pretrial determination of guilt. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir.1985); *Townsend*, 897 F.2d at 994.

The evidence against Zimmerman is strong enough to convince a grand jury to issue a true bill and probable cause finding. (Doc. 39 at 6.) The grand jury found probable cause supported in part by Zimmerman's post-*Miranda* admission to knowing there were drugs inside her body she intentionally carried from Mexico into the United States. (*Id.*) The weight of the evidence also cuts against release.

**3. Defendant's History and Characteristics**

Zimmerman moved to Arizona six years ago. (*See* Doc. 16 at 2.) She appears to have lived in Tucson, but a more precise location is not available. (*Id.*) Zimmerman's mother could not confirm Zimmerman's address, and Zimmerman lied to Pretrial Services about living with her aunt and uncle. (*Id.*; Doc. 32 at 1–3.) Zimmerman has six children; all reside in Las Vegas with Zimmerman's mother, who has legal custody of the minor children. (Doc. 16 at 2.) Zimmerman lost custody of her children due to drug and alcohol abuse. (Doc. 16 at 3.)

Zimmerman has been unemployed for the past three years. (Doc. 16 at 2.) She reports no assets or monthly expenses, but states she is financially assisted by her uncle and aunt. (*Id.*) Zimmerman reports she has abstained from alcohol for the past seven years, has smoked methamphetamine four times in her life, and that she smokes marijuana daily. (Doc. 16 at 3.) Zimmerman initially reported that she is not interested in substance abuse treatment because she has no substance abuse problems. (Doc. 16 at 3.) Zimmerman reports that she is in good mental health, but Zimmerman's mother reports that she was traumatized as a child and in her 30s, and that she needs mental health counseling. (*Id.*)

Zimmerman's criminal history includes five pending cases with multiple failures to appear in each case. (Doc. 16 at 7.) Critically, she has now violated several former conditions of her release, including a condition to report her living address, to appear for

drug and alcohol treatment programs, to participate in drug testing, and to abstain from drugs and alcohol. (Doc. 32 at 1–2.) Zimmerman's history and characteristics therefore weigh heavily against release.

### 4. Dangerous Nature

Congress was aware of the dangerousness of drug trafficking when passing the Bail Reform Act of 1984:

> The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.... The Committee also emphasizes that the risk a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community.

S. Rep. at 12-13, 1984 U.S. Code Cong. & Adm. News, 3195; see also *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1170-71 (D.N.M. 2020). Many courts, recognizing this danger, have denied pretrial release in fentanyl trafficking cases. *See, e.g.*, *United States v. Villot-Santiago*, 502 F. Supp. 3d 579, 580 (D. Mass. 2020); *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) ("It is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community—and the risks associated with fentanyl specifically are even greater."). The Court agrees—where there is a serious danger that the defendant will continue to introduce drugs, violence, and disruptive behavior into the community, that danger warrants detention. Therefore, "when determining whether to detain [the] defendant the court must, in essence, make a prediction as to whether [the] defendant is likely to traffic in illicit drugs if released pending trial based on, inter alia, the factors prescribed by the Bail Reform Act." *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007).

The Government proffers several pieces of evidence to support the claim that Zimmerman's release would create a danger to a person or the community. First, the Government emphasizes that Zimmerman disappeared for months while on pretrial release and presumably under the influence of methamphetamine. (Doc. 39 at 8.) Next, the Government observes that Zimmerman is unemployed, has no apparent means to support herself, and has few safe residential options left to her. (*Id.*) Next, the Government suggests

that Zimmerman's "willingness to carry potentially lethal doses of dangerous drugs inside her body to allegedly pay off another's debt to [a] drug cartel" makes Zimmerman a danger to herself. (*Id.*) Finally, the Government notes that Zimmerman carried 1,000 Fentanyl pills, roughly 300 of which carried potentially lethal doses of 2 mg or more. (*Id.*) Based on the evidence the Government identifies, the nature of Zimmerman's alleged offenses, her apparent inability to comply with court orders, and her dishonesty to Pretrial Services, the Court is unwilling to risk that Defendant will continue to traffic in illicit drugs if released. This factor therefore also weighs against release.

### 5. Conditions of Release

A person facing trial is entitled to release under the least restrictive conditions that will reasonably assure the appearance of the person and should only be denied in rare circumstances. *Motamedi*, 767 F.2d at 1405. Even in the presence of risk, a defendant must still be released if there are conditions of release that may be imposed to mitigate the flight risk or risk to the community. *See* 18 U.S.C. § 3142(e). Any doubts about the propriety of release should be resolved in Defendant's favor. *Motamedi*, 767 F.2d at 1405.

Zimmerman already failed to comply with her conditions of release, so the Court doubts she would comply with any new conditions. Therefore, no conditions could reasonably assure her appearance, and this factor weighs against release.

In conclusion, Zimmerman's continued use of illicit substances while on supervision, her failure to attend treatment sessions, her failure to report a change of address or any accurate address at all, her unemployment status, her possible mental health issues, her criminal history including numerous failures to appear, her dishonesty with Pretrial Services, and the nature of the alleged offense all indicate that Zimmerman poses a risk of nonappearance and danger to the community. After its de novo review, the Court concludes that the Government has shown by a preponderance of the evidence that Zimmerman poses a flight risk. The Government has further shown by clear and convincing evidence that Zimmerman presents a risk to the community that cannot be mitigated by the proposed release conditions.

**IV.    Order**

For the reasons above,

**IT IS ORDERED DENYING** Defendant's Appeal (Doc. 37). Defendant shall remain detained pending trial.

Dated this 13th day of December, 2022.

_____
Honorable John C. Hinderaker
United States District Judge